Mr. Anderson, when you are ready. May I please the court? The court order in this case, that is the subject of this case, we believe meets the requirements for the awarding of a former spouse survivor annuity. This court order was drafted by Mr. Ruff's attorney and we believe that it does include sufficient language to meet the requirements of Office of Personal Management under its own regulations in that respect. The Office of Personal Management regulations are clear that magic words are not required for the awarding of a survivor annuity. Well, there doesn't seem to be any argument about it being satisfactory or meeting the requirements for a survivor annuity. The question is whether, if I understand it correctly, that survivor annuity survives the employee's death or whether it's a survivor annuity pre retirement or post retirement. Isn't that what the fight is over? That is correct, Your Honor. The administrative judge at the Merit System Protection Board turned his decision on his conclusion that it only provided for pre-retirement survivor benefits. We believe that that is incorrect. Let me ask you, there's no pre-retirement survivor annuity, correct? There is not, to the best of my knowledge. I mean, there are survivor benefits, but those benefits would not include an annuity. Correct. Even at best for your case, it seems to me that you cite the Fox case. And in Fox, where they found it was pretty clear, but not absolutely 100%, which I think you would have to concede. We hear all of these arguments, not that it can't be 100%. At a minimum, wouldn't your case have to go back so that the judge could consider the surrounding circumstances and the extrinsic evidence? We believe that that's one possible scenario, but we don't believe that it's necessary in this case because we evidence in that regard, and I think that it's conceded. I think that that was an error. But I think that the court order in question here contains sufficient language for this court to conclude that it did include an intent to provide for the survivor benefits if Mr. Ruff died after he retired from government service. See, I'm having a hard time seeing that because it seems that in Fox, they kind of create three categories. One where it's ambiguous, the other extreme where it's crystal clear, and I think the language in Fox, which would you concede was your language is no clearer than the language in the Fox case. They said it's sort of kind of clear on its face, but we still have to look at surrounding circumstances to determine it. Do you think your language is clearer, less ambiguous than the Fox language? In some respects, Your Honor, I think it was. In the Fox case, I think that it is. In the Fox case, I believe that the issue turned on whether the reference to survivor benefits actually meant the civil service retirement survivor benefits, and I think that they admitted extrinsic evidence on that issue. In our case, we have a sentence at the top of page 7 of the court order that states that the assignment of benefits to the alternate payee, Ms. Snyder, shall not be reduced, abated, or terminated as a result of the death of Mr. Ruff. Now, this constitutes a statement that the parties, or an indication that the parties intended Ms. Snyder receive a lifetime benefit for her entire life, including the period after Mr. Ruff passes away. The Office of Personal Management in its brief has conceded that this sentence really only applies, can only apply, if Mr. Ruff dies after he's retired, because neither Mr. Ruff nor Ms. Snyder will be receiving any benefits until he has retired. So, since Office of Personal Management now recognizes that, I think we move on to the next conclusion that the administrative judge is holding in this case, that the survivor annuity only provides for pre-retirement survivor benefits cannot be upheld, because if this first sentence is given consideration as to the intent of the parties, then that conclusion by the administrative judge just doesn't pan out. What do we make of the second sentence in that paragraph? That's additional, Your Honor. I think that there is apparently some sort of nominal lump sum benefit that is paid if the employee dies pre-retirement, and I think that it was intended that that be granted. But the first sentence, in order for this first sentence to operate, we need to have the former spouse survivor annuity. And in the Bliznik case and the Walker case, the Merit System Protection Board has acknowledged that the only way we can have a lifetime benefit is through former spouse survivor annuity, and when you have that statement in a court order, that confers the requisite intent of the parties. But your agreement, the divorce agreement itself, expressly says pre-retirement surviving spouse pension benefits, and then says nothing about post-retirement survivor benefits. How do we get past the clear language that's used in the agreement? Your Honor, it's our position that the two sentences have to be read separately, and that there are other indications in the agreement that the parties did intend to have the survivor annuity awarded. And I think that the Perry case, cited by both parties to this appeal, demonstrates in the Perry case, they had a dispute over whether language provided for the former spouse survivor annuity, and they had expressed language that pre-retirement survivor benefits would be paid, and or, and or, the same language, those two words appear in the title at the top of page 7, a qualified joint retirement survivor annuity or something like that. And the husband in the Perry case made the argument that this court order talks about pre-retirement benefits, but it doesn't provide expressly for if the death occurs after the date of retirement. And so I think that Perry is significant with respect to that issue. Mr. Anderson, this is obviously a form book document of some kind, don't you suppose? Do you have any idea what the origin of that awkward document happens to be, and why the people in Wisconsin happen to be using it? We believe that this document was drafted by Mr. Ruff's attorney. We presented evidence at the hearing that it was. In fact, there's a cover letter in the appendix that shows that it was drafted by him, and we assume that he came up with this document from some other divorce proceeding or some other source. Is Mr. Ruff still alive? Mr. Ruff is alive, yes. And is his view of what this document means relevant to the case in any form as you view it? Your Honor, that is a relevant point to this appeal. Mr. Ruff was allowed by the administrative judge to testify at some length as to the intent of the parties, and he was allowed and in fact encouraged to do that by the administrative judge. Ms. Snyder was cut off immediately when she started to testify concerning the intent of the parties. So, Mr. Ruff's testimony is in the record. Ms. Snyder's is not at that point. Let me ask you about his, he is, this is unusual. I don't know that I've been on one of these survivor annuity cases where, I mean, typically the surviving spouse is coming in after the spouse, ex-husband or current husband or wife dies, and they're seeking to get their money out of OPM. This is almost like an advisory opinion, is it not? I mean, it's not clear which of the two spouses is going to pre-decease the other. I mean, it's not entirely clear, is it, that there'll ever be a claim made for these survivor annuity benefits at all, right? I mean, it's contingent upon a lot of things happening in the future, which may or may not happen, am I right? It is possible that Mr. Ruff will not, will outlive Ms. Snyder. We are concerned that it will be the other way around. Yeah, but isn't this kind of an advisory opinion? I mean, why is there standing, I mean, isn't this kind of a hypothetical or an advisory opinion as to what, we should decide what rules will govern if certain things happen in the future, which may not happen, correct? Your Honor, Merit System Protection Board, or I'm sorry, Office of Personal Management changed its mind a number of times on this issue. And in the last decision, when they decided that, I think changing its mind maybe three or four times, they included a provision at the end saying that this is the final order, and if you want to appeal this, you appeal this to the Merit System Protection Board. And so there is a high level of concern on our part that waiting for the death of one of the parties would constitute a waiver of our right to appeal. You can just picture the government saying, race judicata, or something similar, can't you? We would expect that would happen. You wish to preserve your rebuttal time, Mr. Anderson? Yes, I do, Your Honor. Thank you. Mr. Danakis? Mr. Danakis, let's pick up at the point where Judge Prost left us. That is, it strikes me that at a minimum, there are a couple of remedies that Ms. Snyder may be entitled to. One of them is she may be entitled to her survivor benefit based on the terms of the document, or at a minimum, a remand under the Fox case. Or there's a third possibility, which is that she may be entitled to have a remand directing the government to undo everything it's done to this point, because nothing that they've done to this point is anything other than an advisory opinion, and she should not be bound by that advisory opinion until the issue actually becomes relevant. What's your reaction to any one of those three possibilities? Okay, Your Honor. May it please the Court? With regard to the last possibility, the question of, is there currently standing, is this issue ripe? I know that issue came up in a previous appeal, and I have to confess, I don't know the name of that case. But in that case, the Department of Justice was asked to file a subsequent brief, which we did, and we took the position that it was not a problem with the case not yet being ripe. And I understand that the Court accepted that argument, although I do understand that that was an unpublished decision, and I can certainly provide the name of that case to the Court if that would help. Do you understand the theory under which they accepted the argument? I'm afraid I do not, Your Honor. But I can certainly file a supplementary brief if that would be helpful to them. With regard to the other questions you raised, would it be useful or necessary to remand this case to the Board for further testimony under Fox? I don't think that that is necessary or appropriate. I have to disagree with some of the things that my opponent said. In fact, both parties testified for the MSPB with regard to their understanding as to what the court order was supposed to provide. Now, it is true that the judge cut off Ms. Snyder when she started to specifically address what she understood to be the intent of the agreement. But Ms. Snyder went and addressed some other issues which the judge accepted. He drew a distinction initially between what he called testimony with regard to the background of the divorce, which he allowed both parties to testify about, and then specifically when it came to intent, he did cut off Ms. Snyder's testimony. Is – are we to understand from this that the – that the administrative judge viewed this as a Fox-type case, that is, one in which there was at least language in the document that could lead to the result that Ms. Snyder was – is asking for? It's not altogether clear, Your Honor. For one thing, the judge – Because if – if the document expressly provided, then you don't need any of that testimony. That is correct. If the document did not – it's a peculiar category, isn't it? If the document did not expressly provide under the statute, then you don't need any testimony. But under Fox, if the document may be understood to have expressly provided, then you go into all this. So the administrative judge must have thought this was a Fox case. Otherwise, why would the administrative judge take all that testimony? Well, perhaps he thought that during the proceeding, but I think he ultimately ruled that he thought that the court order was clear and unambiguous and there was no need to get into that sort of testimony. But I think the important point is that if the court concludes that it is necessary or appropriate to get into that sort of evidence, that evidence is in the record. Both Mr. Snyder – I'm sorry, Ms. Snyder and Mr. Ruff testified with regard to their understanding as to what the court order was to provide. Yeah, but the administrative judge has not ruled on the record in terms of his view of that testimony, right? I mean, he sort of said it, but then he said, but – correctly, I think. And as you pointed out, he said notwithstanding all of that, I'm not looking at intent to reach my decision here. That's correct, Your Honor. But there would certainly not be a need for a remand to take additional testimony. There is testimony in the record from both parties. And Mr. Ruff testified that it was his understanding that the court order was not supposed to provide Ms. Snyder with any kind of post-retirement survivor benefits. Is it the government's view – excuse me, I was just going to – is it the government's view then that the record is such that a remand would not be useful – I think that's correct, Your Honor. – even under the Fox type of thing? That is correct, Your Honor. So that we would be free then to decide this case on the record – That is correct, Your Honor. – using the Fox analysis if we disagree with the administrative judge's view that this is a Category 3 clear wrong type case? That is correct, Your Honor. All right. Thank you. Well, let me – did the judge – refresh my recollection. Did the administrative judge consider the regulation that is discussed in your brief? No, Your Honor. He did not. Okay. Well, let me ask you about – because you think the regulation does it in this case. You think the regulation is clearly applicable and it resolves the issue. That is correct, Your Honor. And I guess I want to just try to figure out why – or how you think that. Okay. Because the regulation, in addition to allowing for similar words, gives examples of words. And one of those examples is death benefits. So how is survivor benefits different than death benefits? Okay. In other words, if the regulation – frankly, in my view – if the regulation just said you have to use the word survivor annuity because annuity really means something, then I could understand how you would say even though you use survivor benefits, it's not the same thing. But the regulation seems much broader than that because it specifically allows for terms like death benefits. Yes. So how is death benefits broader or whatever than survivor benefits? I would respond to that, Your Honor, by saying that the use of the phrase survivor benefits in the court order is consistent with OPM's regulations, but it specifically addresses pre-retirement survivor benefits. And there's no indication – Well, what does specifically address? Well, I'm looking now at the second sentence of Section 6 that's in the Joint Appendix of page 22. And it specifically talks about pre-retirement survivor benefits. Now, it is true – Right. But the first sentence doesn't. That is correct. And the first sentence is using language which is very similar to language which is discussed in the regulation. Exactly. No. I mean, so I think the regulation applies. What I'm asking about is in the heading of that section, it says pre-retirement surviving spouse pension benefit and or other survivor benefits. Yes. So why isn't that reference to other survivor benefits sufficient to meet the second test in that regulation about using that other term? Okay. Several reasons, Your Honor. First of all, other survivor benefits is not clear. It's not specific. Well, how is it less specific than death benefits? If it said and – Well – If it said and – I'm sorry. I'm changing. Go ahead. Let me ask you a question. If it said and or other death benefits, would you say then that the regulation, that it comes within the regulation, it's allowable within the regulation? I would not, Your Honor, because the parties have specifically called out in the text of Section 6 pre-retirement survivor benefits. And if they were intending to go beyond that and provide post-retirement survivor benefits, one would normally expect to see that explicit phraseology. So you're reading the sentence grammatically to say pre-retirement surviving spouse pension benefits and or, and you would insert and or other pre-retirement survivor benefits. No, Your Honor. I would not. I'm saying that the phrase other survivor benefits is not sufficiently specific in contrast to the very specific term pre-retirement survivor benefits. But more importantly, the phrase other survivor benefits is introduced by the phrase and slash or. Now that's a very tentative phrase and it doesn't convey any specific intent to provide anything. It's basically merely calling out the possibility that the parties were intending to provide other survivor benefits. But see, my problem is, you know, I'm looking at the regulation and it says, you're right, I agree with you that the first part comes within this, we'll continue. But the second part, it says, but does not use terms. It doesn't specify exactly, exactly how they'd use not an and or. And again, it used death benefits. So I'm just, I really am looking for an answer as to why this wouldn't satisfy the regulation. Well, Your Honor, if instead of saying and slash or, if it said and other survivor benefits, then I think Ms. Snyder would have a much stronger argument, although I don't think she would still necessarily prevail. But use of the phrase and slash or is very tentative and doesn't convey any intent to provide any benefits. Well, wouldn't it have to be and or? Because you can't have both. If it was pre-retirement and post-retirement, obviously you're either going to die pre-retirement or post-retirement. You can't die in both contexts. So to me, just reading English, it seems that and or is the appropriate introduction if they mean post-retirement surviving benefits. Well, I would respond to that, Your Honor, by saying that I think the agreement could convey the right to both types of benefits, and then the question would be which one does the recipient actually receive. So I don't think it's in any way inappropriate to say and if that's what the party's intended. I don't think the use of... So what's wrong with or? You say and is appropriate. Correct. And you, so what makes this, again, why is this, it uses survivor, survivor benefits, you agree, is not that different from death benefits, which is provided for in the regs. So what makes this different? Is it the and? Is it the or? Well, if it only said or, then we would have a heading that talks about two different things. It talks about the pre-retirement surviving spouse benefit and these other survivor benefits. I think you need to take into account the role played by the heading of Section 6 as opposed to the text of Section 6. It's the text of Section 6 where the parties actually address the substance and convey whatever rights they are providing. But the text... Well, I think you can see that, do you not, in your briefs that the first sentence in that sentence really applies to the post-retirement surviving benefits. It does. You agree with that in your brief. Yes. You even point out that you disagree with the AJ's conclusion to the contrary, right? We certainly agree that the first sentence could be construed to provide that benefit if you ignore Section 838.803B because that first sentence, which... What is that 838? There are too many numbers here. Oh, you mean... Sorry. You're talking about the regulation. Correct. Okay. Sorry. Because the regulation called... There's sort of two sets of phrases addressed in the regulation. In the first set, they identify several different phrases which fail to provide a survivor benefit and those phrases, I think, are completely consistent with what we see as the first sentence of Section 6. And it's only... And then in the second half of the regulation, the kinds of terminology that convey a survivor benefit are identified and none of those terminologies appear in that first sentence. So the first sentence fails the standard that is in OPM's regulations. Right. But that's why you need... I agree. I mean, I see that absolutely, that you can't... That first sentence is exactly what the reg is saying is insufficient. So what the reg says, but if you have some other term, that makes it okay. Okay. So that's why I'm asking why this other term in the heading, survivor benefits, isn't comparable to death benefits or similar terms. Well, again, Your Honor, I would say because it's introduced by the phrase and slash or, I think that's a major problem. And what's the problem with that? You said and would be okay, but it's the or that makes that a problem or is it the and that makes that a problem? Well, if it was only or, then clearly this would not meet the standard because the heading would talk about two possible benefits and would be saying you're getting one or the other. And then you look at... Yeah. Well, you're getting a pre-retirement or a post-retirement. Well... You can't have both of them, right? Well, again, Your Honor, I think we disagree as to what this agreement is doing. I think the agreement is providing rights to Ms. Snyder. And then the question is, does she actually get the benefit of those rights? Well, as a matter of law, she could get them both, couldn't she? She could be provided both benefits in this agreement, but she couldn't collect on both benefits. Right. And indeed, it's not guaranteed that she would collect on any of these benefits because if she pre-deceased Mr. Ruff, she would not get anything. That gets us into a whole other problem. The and or problem, counsel, is a classic example of why no one should ever write a legal document with and slash or. I agree, Your Honor.  Now, lawyers may also think about it. Putting that aside, I think the general understanding of and slash or is A, it's infinitely ambiguous, and B, what it does mean at least is that you can use either the and or the or because the document doesn't specify which it is. So using Judge Post's analysis, if we can use the and, the heading then does provide for both pre- and post-retirement benefits. I want to try a little different tack with you for a minute. The government received this divorce court order, and in June of 1994, sent Ms. Snyder a letter stating that the court order was acceptable for processing, and that's consistent with 838-723-C, which provides that OPM will do that when they receive such a court order. The government then, on July 7th, 1994, clarified that she would send a handy letter, clarifying that she'd received two types of awards, pre- and post. Mr. Ruff then retired. Under 838-723, OPM has a duty to inform a person who submits such an order that the order isn't satisfactory and explains why, according to your own regulations. Government failed to do that. Finally, Mr. Ruff retires, which, under your rules, now freezes the document, and it's only until later that the government scratches its collective heads and says, oh my, this really won't quite do, but there were some intermediate letters affirming that it would do even before that. Why isn't the government simply estopped from, at this point, turning around and saying, sorry, it's too late to fix it, and we've changed our minds? Well, Your Honor- Richmond doesn't apply. We would all agree to that. So we don't have to worry about the Richmond case as stopping an estoppel. Why isn't this such a clear case of estoppel that the government should have conceded this whole thing and saved us the pain of having to go through it? Well, Your Honor, it's well established that in order to apply estoppel against the federal government, you have to show affirmative misconduct, and there is no evidence whatsoever here of any kind of misconduct by OPM. Now, it is regrettable that OPM changed its mind with regard to the meaning of the court order, but there's simply no evidence that there was any misconduct involved. It was simply an honest error. And the government can't be estopped from making errors to someone's ultimate detriment? No, Your Honor. Under the binding precedent of this circuit, you have to show affirmative misconduct in order to estop the government. I would also like to add that if Congress intended these kinds of scenarios to be prohibited, they could have easily provided in the retirement statutes a provision saying that once OPM has ruled that a certain benefit will be provided to someone, they can't reconsider and decide that that person is getting a lesser benefit. Well, we wouldn't want that rule as long as there was an opportunity for the parties to go back to the court and get it clarified, litigated if necessary, re-litigated if necessary. But OPM blocked that solution by waiting until after Mr. Ruff retired. Well, Your Honor, I really have to disagree with the phraseology that OPM waited. There's no evidence suggesting that OPM failed to timely provide Ms. Ruff with its then-current assessment as to the meaning of the court order. Yes, and that then-current assessment was, it's fine, and you're going to get both sides. And even after he retired, on August 9th, OPM sent, this is now in 2001. This is, what, four years? No, this is seven years, seven years after this document was first submitted to OPM. Seven years later, Ruff retires, and OPM sends another letter. And that other letter says, everything's fine. At what point is Ms. Snyder supposed to figure out that the government is getting ready to really do her in? Well, Your Honor, again, I just would have to repeat that the binding precedent of this circuit says that you have to show affirmative misconduct in order to stop the government, and there is no evidence here even suggesting affirmative misconduct. Well, this could come close to misconduct, wouldn't you think, counsel? Absolutely not, Your Honor. There is no indication here of anything other than an honest error, and an honest error could not possibly constitute misconduct. I would like to address one point that was brought up and answered by Ms. Snyder's attorney. There was a question raised, do we have any knowledge with regard to how the first sentence of section six ended up in the court order? Mr. Ruff testified with regard to how that language got there. Mr. Ruff occupied an unusual position where he was employed by the federal government. He was both an employee of the federal government and an employee of the state government. So he participated in both systems' pension plans. And when the parties divorced, Ms. Snyder obtained rights from both Mr. Ruff's state pension and from his federal pension. And that's in the administrative, the joint appendix in pages 78 to 79 and 82. And so Mr. Ruff testified that when the parties were dividing the marital assets, the attorneys first addressed his state pension rights, and they drafted a separate document. It's not in the record, which addressed how his state pension benefits would be split between himself and Ms. Snyder. And the language that we see as the first sentence of section six was drafted initially for that other document. And then when it came to the drafting of the document that we see in the joint appendix, which addressed Mr. Ruff's federal pension, the attorney simply carried over this same language. So it appeared that it was basically just inadvertently included in this agreement. And that testimony is in the joint appendix in pages 79 to 80. Thank you, Mr. Denakis. Mr. Anderson, you have more than four minutes remaining. With respect to the issue of misconduct, the administrative judge made some comments on the record at the end of the hearing that are, I think, helpful in addressing that question. The administrative judge recognized the unfairness of this situation to Ms. Snyder. And he concluded that the conduct of Office of Personal Management was inexcusable, and that it was unfair to Ms. Snyder, and that it was bad. And I think the words he used were that it was really, really, really bad. I think that this conclusion leads us to believe that the administrative judge thought that Office of Personal Management's conduct did constitute misconduct. Well, being bad is not quite the same as affirmative misconduct, is it, counsel? Your Honor, thank you for that question. I did search the case law for a good definition of misconduct. And unfortunately, I didn't come across one. Misconduct is not very well defined in the cases as to what is required by the circuits that require misconduct for a finding of estoppel. I think that misconduct is something short of fraudulent or intentional conduct. I think that when an administrative agency breaches a fundamental duty that has very important consequences for someone like Ms. Snyder, that breach of duty constitutes misconduct. This was not a mere mistake. This was a situation where Office of Personal Management changed its opinion on how it interpreted this document, and attempted to make that change at a point when Ms. Snyder no longer could go back into the state divorce court and get the matter corrected, whereas if it had acted anywhere any time earlier during those seven years that passed, she could have done that. I suppose we treat our children's bad conduct as misconduct. I suppose we could treat the government's the same way. Is that your argument? In this case, I think that that would be appropriate, Your Honor. Isn't that a problem, though, if we open that door to every time the government messes something up, which has been heard to happen on occasion? If we then stop the government from correcting its own errors, haven't we created even bigger problems? I can just see a room full of plaintiffs up here now. Your Honor, it's our position that there comes a point when the government reaches the point of no return, and that happened in this case. They waited seven years to inform Ms. Snyder of the change, and they waited until roughly six weeks after Mr. Ruff retired to inform her of that fact. Now, its own regulations require Office of Personal Management to review these court orders when they come in from the divorce court. We have these custom-drafted orders coming in from all over the country, and they're supposed to review these and render a decision as to whether they satisfy the Office of Personal Management's regulations. And if they don't, if there's some glitch or some problem, they're supposed to notify the attorneys so that they can go back and get the matter corrected. And, Your Honor, you referred to the regulation 5 CFR 838.722 and .723, and if they had done that, this wouldn't have happened. I didn't see anything in the record, Mr. Anderson, explaining why the government, after seven years, dug this one out of the files and said, whoops. Do you have any, is there anything that you know of in the record that would explain why this happened? Your Honor, to the best of my knowledge, there's no evidence in the record as to why it happened. Okay. That same code section is followed by the next section, 838.723, that says if they find some problem with it, they're supposed to notify the parties. And I think that all of this is supposed to happen when that divorce order is first submitted to Office of Personal Management. The appellant has advanced four separate and distinct remedies that can be used for correcting this injustice. And we request that the court consider those four remedies here. Thank you, Mr. Anderson. Our next case is Miramonte versus the Postal Service.